[Civ. No. 2009.   First Appellate District.—December 14, 1917.]

## CALBERTH B. GARDNER, Appellant, v. BOARD OF PARK DIRECTORS et al., Respondents.

MUNICIPAL CORPORATIONS—EMPLOYEES OF PARK BOARD OF CITY OF OAK-LAND—POWER TO DISCHARGE—CONSTRUCTION OF CHARTER.—Under the charter of the city of Oakland (Stats. 1911, p. 1551) the power to discharge an employee of the board of park directors is vested in the board itself and not in the mayor, notwithstanding the provisions of article VII, section 29, subdivision 1, giving the mayor general supervision over all boards appointed by him, and article XIII, section 81, making all persons in the classified civil service subject to suspension and removal by the commissioners in whose department they are employed, since the mayor is not a "commissioner," and an employee of the park board is not in the department of public affairs of which the mayor is the head.

APPEAL from a judgment of the Superior Court of Alameda County.   William H. Waste, Judge.

The facts are stated in the opinion of the court.

Rodolph Hatfield, for Appellant.

Paul C. Morf, City Attorney, and William H. O'Brien, Deputy City Attorney, for Respondents.

Harrison S. Robinson, as *Amicus Curiae,* for Civil Service Board.

Charles A. Beardsley, as *Amicus Curiae,* for Civil Service Employees' Association.

KERRIGAN, J.—This is an appeal from a judgment and order sustaining a demurrer to an application for a writ of mandate.

The petitioner was originally appointed to the position of assistant gardener in the month of June, 1915, from the civil service classified list of the city of Oakland, under and in accordance with the civil service provisions of the charter of that city. The following December he was dismissed by the respondents, the board of park directors, whereupon he filed his petition in the superior court of Alameda County, praying for a writ of mandate directing the respondents to reinstate him in that position. In support of his claim to such relief the appellant contends that the power of removal is vested in the mayor of the city as commissioner of public affairs and not in the board of park directors, and therefore his removal was irregular and invalid.

For a complete understanding of the duties and powers of the various commissions and boards of the city of Oakland a review of its charter provisions becomes necessary.

Article V, section 8, of that instrument (Stats. 1911, p. 1565) provides that the elective officers shall be a mayor, an auditor, who shall be *ex-officio* assessor, four commissioners and six school directors; also that the council shall consist of the mayor and the four commissioners above specified. It further provides that candidates for commissioner shall be designated as commissioner No. 1, or No. 2, or No. 3, or No. 4. Throughout the charter there is a clear distinction made between the mayor and these four commissioners. In several sections they are distinguished one from the other, and in no section is the mayor referred to expressly or by implication as a "commissioner." (See art. V, secs. 8, 9, 10, 12, 14, 15, 17, and 19.) In article VI, section 21, the mayor is made chief executive officer of the city, and he "shall see that all the ordinances, resolutions and laws thereof are duly enforced. He shall be charged with the general oversight of the several departments of the municipal government." Article VII defines these different departments, which are five in number. Section 27 of that article provides that "The executive and administrative powers, authority and duties of the city, not otherwise provided for, shall be divided into five general departments, as follows:

"(1) Department of public affairs, which shall be under the supervision of the mayor.

"(2) Department of revenue and finance, which shall be under the supervision of the commissioner of revenue and finance.

"(3) Department of public health and safety, which shall be under the supervision of the commissioner of public health and safety.

"(4) Department of public works, which shall be under the supervision of the commissioner of public works.

"(5) Department of streets, which shall be under the supervision of the commissioner of streets."

Under this section there is a specific designation of four commissioners, who are elected by the people. By section 28, article VII, it is provided that the council shall designate and assign one of its members, not the mayor, to be a commissioner of revenue and finance, one to be a commissioner of public health and safety, one to be a commissioner of public works, and one to be a commissioner of streets. Here again there is a clear distinction made between the four commissioners and their departments, and the mayor who has "supervision" over the department of public affairs. The department of public affairs in turn is given "general supervision" over all boards appointed by the mayor. (Art. VII, sec. 29, subd. 1.)

It thus appears that the intention of the framers of the charter was to vest in some one department a general supervisory control and check over the different boards appointed by the mayor. The charter further particularly specified the authority, powers, and duties of these four different departments presided over by the four commissioners. In subdivision 1, section 30, article VII, provision is made for the appointive chief officials, which are: City attorney, treasurer, who shall be *ex-officio* tax collector; a city clerk; a city engineer; a chief of police; a chief of the fire department; a street superintendent; a health officer, and a superintendent of the electrical department. Some of these are appointed by the city council, and others by the different members of the four named commissioners. The council itself is the governing body of the municipality.

In addition to the above-named appointive officials, the charter also provides for certain other appointive boards by

the mayor, subject to confirmation by the council. They are as follows: (1) The board of library directors; (2) the board of playground directors; (3) the board of park directors; (4) the civil service board. (Arts. X, XI, XII, and XIII.) With the exception of the civil service board each of these last-described boards serves without compensation.

It appears to us plain that these boards appointed by the mayor, subject to confirmation by the council, are intended by the charter to consist of persons particularly qualified to render services of a special character and without reference to political considerations.

Recapitulating the above analysis of the charter, it appears that there are twelve elective officials, i. e., the mayor, the auditor, the four commissioners, and the six school directors. The mayor and the four commissioners are *ex-officio* members of and constitute the council. On the other hand, the appointive officials are certain officers designated as ''Chief officials,'' such as the city attorney, treasurer, city clerk, etc., and the four boards appointed by the mayor, who are assumed to have special knowledge for the proper administration of the libraries, the playgrounds, the parks, and the department of civil service. Each of the four elective commissioners is placed in charge of one of the general departments. The fifth general department, the department of public affairs, is placed under the supervision of the mayor (subd. 1, sec. 27, art. VII). Here it would appear is a carefully planned segregation, division, and balancing of powers. The mayor has general supervision of all the departments. The department of public affairs itself has a general supervisory control over all boards appointed by the mayor. Each of the other four general departments is under the general supervision of an elective commissioner, and each of the appointed boards has the control of a certain part of the municipal government, and is responsible for its proper conduct, just as each of the appointive public officials is responsible for the proper conduct of his office.

Coming now particularly to the board of park directors, it is provided that they, among other powers, ''shall have the complete and exclusive control, management and direction of the said parks, squares and grounds. . . . Said directors may employ and appoint superintendents, laborers, surveyors, gardeners, engineers and other officers and assistants, and

prescribe and fix their duties, authority and compensation. They shall have the exclusive management and disposal of all funds legally apportioned or received from any source for the support of said parks, squares, and grounds. The board shall establish rules and regulations for the conduct of its officers and employees and may require adequate bonds from all or any of them, except laborers, for the faithful performance of their duties in such sums as may be fixed by it.'' (Art. XII, sec. 65.) It is conceded that the fundamental rule that the power to appoint includes by implication the power to remove should apply to the board of park directors unless something is found elsewhere in the charter making the rule inapplicable. The language of section 81 of article XIII is relied upon by appellant as showing that the rule does not here apply. This section provides that ''all persons holding positions in the classified civil service shall be subject to suspension, fine and also to removal from office or employment, by the commissioner in whose department they are employed.'' It is contended by the appellant that the commissioner here referred to is the mayor, for the reason that the mayor is given general supervision over all the boards appointed by the mayor. (Art. VII, sec. 29, subd. 1.) From this the appellant argues that this supervision by the department of public affairs, and that the mayor having supervision over the department of public affairs, is in fact the commissioner over that department, and that as such commissioner he alone has the power to remove the appellant from that department.

The provisions of the charter do not warrant such a construction. The mayor is not in any sense a commissioner. He is the chief executive of the city, and as such is very properly given the supervision over the department of public affairs, which in turn has a general supervision over appointed boards. And it is clear that it was never intended by this general supervision to make an employee of the park board one under the department of public affairs. Manifestly, particular control of the parks and of the employees of the park board is given to the park board itself, and all that is intended by the other sections of the charter is to give a general supervision to the department of public affairs, and to the mayor as chief executive of the city, over the park board, as well as over the other three appointed boards. In

this way only can an intelligent and working scheme be found in the charter as adopted. Any other construction would lead to confusion and to a limitation upon the authority of the park directors and other appointed boards which is clearly intended to be vested in them, so that they may be held responsible for the proper management and control of the affairs of the municipality placed under their jurisdiction.

It is urged in the briefs filed by the respondents, board of park directors, that the civil service provisions of the charter do not apply at all to the park employees. Meritorious as we think this contention is, still in view of what we have said we do not consider it necessary to pass upon that particular question. Whether the civil service provisions apply or not, the power of amotion is placed by the charter in the park board; and as it is not claimed that any of the civil service provisions of the charter were violated as to the mode followed in removing appellant, it follows that the order of the trial court should be sustained. It is ordered that the order appealed from is affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1918.