Filed 6/22/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Petitioner,<br><br>v.<br><br>PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>     Respondent;<br><br>MUNICIPAL ATTORNEYS ASSOCIATION OF SAN FRANCSICO,<br><br>     A Real Party in Interest.</td><td>A173302<br><br>(Public Employment Relations Board Decision No. 2958-M Case No. SF-CE-2157-M)</td></tr>
</table>

The Meyers-Milias-Brown Act (MMBA) (Gov. Code, §§ 3500–3511) governs "disputes regarding wages, hours, and other terms and conditions of employment between public employers and public" unions. (*Id.*, § 3500.) Among other things, the MMBA establishes procedures for resolving those disputes if the public employer and union reach an impasse during negotiations. (Gov. Code, §§ 3505.4 & 3505.5.) Under those impasse resolution procedures, a factfinding panel may "recommend terms of settlement . . . ." (*Id.*, § 3505.5, subd. (a).) But that recommendation is "advisory only." (*Ibid.*) Thus, notwithstanding the panel's recommendation, the public employer "may, after holding a

1

public hearing regarding the impasse, implement its last, best, and final offer." (*Id.*, § 3505.7.)

The MMBA also provides an alternative for charter cities or counties. Those cities and counties may adopt their own impasse resolution procedures in lieu of the MMBA's procedures, so long as their procedures include "a process for binding arbitration." (Gov. Code, § 3505.5, subd. (e).)

Petitioner City and County of San Francisco (City), a charter city and county, has opted for this alternative. Under the Charter of the City and County of San Francisco (Charter), certain labor disputes are eligible for interest arbitration if the City and its employee union reach an impasse. If the dispute is eligible for and submitted to arbitration, then the arbitrators must choose between the "last offer[s] of settlement on each of the remaining issues in dispute" between the City and its union. (Charter, § A8.409-4.)[1] Once the arbitrators make that choice, their decision is "final and binding," and the City has no other recourse. (*Ibid.*)

Real party in interest Municipal Attorneys Association of San Francisco (MAA) represents City employees who are "exempt from competitive civil service selection, appointment, and removal procedures" under the Charter. (§ 10.104.) As "exempt appointments" (S.F. Civ. Service Com. Rules, rule 114, § 114.25),[2] MAA members are at-will employees who "serve at the pleasure of the appointing authority" and may be terminated without cause (§ 10.104). During its

---

[1] Unless otherwise indicated, all further statutory references are to the Charter.

[2] All further rule references are to the San Francisco Civil Service Commission Rules.

most recent labor negotiations with the City, the MAA made two proposals that would have altered the at-will status of its members. The first would have limited the City's ability to discharge MAA members by requiring "just cause" for any "discipline," including "terminations (discharges)." The second would have required the City to lay off MAA members in order of their seniority. After the City refused to submit these proposals to binding interest arbitration, the MAA filed an unfair practice charge with respondent Public Employment Relations Board (PERB). PERB found that the MAA's proposals were eligible for arbitration under the impasse resolution provisions of the Charter and held that the City engaged in bad faith bargaining by refusing to submit those proposals to arbitration. We, however, find that the MAA's proposals are not eligible for arbitration under the Charter. We therefore vacate PERB's decision to the contrary.

## BACKGROUND

### A.

The MAA is the exclusive representative of roughly 500 attorneys employed by the City. Those attorneys are currently "at-will" employees with no "job protections."

The MAA and the City entered into a memorandum of understanding (MOU), effective July 1, 2022 through June 30, 2024. During negotiations over that MOU, the MAA proposed adding certain job protections, including binding arbitration for any discipline of its members. The City, however, rejected that proposal, claiming that it conflicted with the Charter. According to the MAA, the City refused to negotiate over any proposals that would alter the at-will status of its

3

attorneys, but the City denied this. The parties, however, agreed that the MAA's proposal was never submitted to interest arbitration and that the MAA did not file an unfair practice charge with PERB.

In December 2023, the MAA initiated negotiations over the next MOU. During these negotiations, the MAA, which had recently affiliated with "Teamsters Local 856," prioritized the addition of job protections due to the recent history of "mass political firings" at the San Francisco District Attorney's Office.

On February 12, 2024, the MAA sent its first proposal to the City. Proposal 1, titled "Attorney Discipline," would have altered the at-will status of the City's attorneys by establishing that "[a]ll discipline shall be for *just cause* and progressive." (Italics added.) Under the proposal, " 'discipline' means and includes demotions, suspensions, or terminations (discharges)." Proposal 1 further stated that the City "shall use progressive discipline in addressing the behavior of an attorney" but may "skip one or all levels of progressive discipline, if necessary." Finally, the proposal provided that "[a]ll attorney discipline will be reviewable, appealable and subject to binding arbitration . . . ."

Over the rest of February and March 2024, the MAA submitted additional proposals to the City, including Proposal 14. Under Proposal 14, titled "Reduction in Force and Layoff," "[w]hen a reduction in force becomes necessary, layoff and demotions in lieu of layoff *shall be accomplished* in inverse order of total paid . . . continuous service in the classification(s) in the current department of the effected attorney . . . ."

4

(Italics added.)  Like Proposal 1, Proposal 14 would have limited the ability of the City to discharge its attorneys without cause.[3]

The City never made a counteroffer to the MAA's just cause proposals.  Instead, the chief negotiator for the City wrote in an e-mail to the MAA dated March 11, 2024:  "The City has not taken the position that Proposal #1 is outside the scope of bargaining under the MMBA, nor has the City refused to bargain Proposal #1.  Instead, as the City has done any time [the] MAA has raised just cause rights in the past, and as is permitted under the MMBA, the City has rejected Proposal #1 and proposed instead that the parties maintain the status quo."  According to the City's negotiator, "[s]ection 10.104 reflects the express will of the voters that attorneys employed by the City be at[-]will," and "the City will not submit any proposal that would alter the attorneys' exempt/at-will status to the impasse resolution procedures under . . . [s]ection A8.409-4."

In subsequent negotiation sessions, the City repeatedly rejected the MAA's just cause proposals.  The City, however, agreed to mediate and bargain over those proposals, explaining that they would be subject to factfinding under the impasse resolution procedures of the MMBA.  In doing so, the City took the position that any just cause protections would conflict with the Charter and that the MAA's just cause proposals were not eligible for binding interest arbitration under the Charter.  The MAA disagreed, arguing that its proposals were eligible for arbitration.

---

[3] We refer to Proposals 1 and 14 as the "just cause proposals."  They are the only MAA proposals at issue here.

On April 25, 2024, the City and MAA reached a tentative agreement. That agreement included a provision for reopening negotiations over the MAA's just cause proposals if PERB ruled in favor of the MAA on its unfair practice charge. The current MOU between the City and MAA runs from July 1, 2024 through June 30, 2027.

**B.**

On April 2, 2024, the MAA filed an unfair practice charge with PERB. The charge alleged that the City violated the MMBA by refusing "to submit to interest arbitration a dispute over job protections for the bargaining unit members." The MAA also moved to expedite the charge.

PERB granted the request for expedited processing and issued a complaint on May 3, 2024.[4] The complaint alleged that the City engaged in bad faith bargaining in violation of the MMBA by refusing "to bargain over mandatory subjects of bargaining including but not limited to just cause protections and seniority" or "to submit mandatory subjects of bargaining[,] which includes[ ] [the MAA's] Proposal 1 (just cause protections) and Proposal 14 (reductions in force based on seniority) to interest arbitration as required by [s]ection A8.409-4 of the . . . Charter."

**C.**

At the hearing before an Administrative Law Judge (ALJ), the MAA presented two witnesses who testified about the negotiations between the City and MAA. The City countered with four witnesses who testified about: (1) negotiations between the City and MAA;

---

[4] PERB also denied the City's motion to revoke the expedited status of the charge.

(2) exempt appointments under the Charter; (3) the City's Civil Service Commission (Commission) and civil service merit system; and (4) negotiations over the Charter's impasse resolution provisions, including the interest arbitration provisions, before their adoption by the voters.

After the hearing, the ALJ issued a proposed decision. In the decision, the ALJ held that: (1) section 10.104 conflicted with the MMBA because the section prevented the City "from agreeing to any limitations on department heads' authority to discipline, terminate, or lay off [MAA] employees"; (2) the MMBA superseded section 10.104 under the home rule doctrine because the MMBA addresses "matter[s] of statewide concern" that are "narrowly tailored"; (3) the MAA's just cause proposals were eligible for binding interest arbitration under the Charter's impasse resolution provisions; (4) the City's refusal to submit these proposals to arbitration "directly and irreconcilably conflict[ed] with fundamental statewide principles of good faith bargaining as codified in the MMBA"; and (5) the City engaged in bad faith bargaining by refusing to submit the proposals to arbitration.

**D.**

In *Municipal Attorneys Association of San Francisco, Teamsters Local 856 v. City and County of San Francisco* (2025) PERB Dec. No. 2958-M (*MAA*), PERB "affirm[ed] the . . . conclusions of the ALJ" but for different reasons. (*Id.* at p. 3.) Like the ALJ, PERB agreed that the Charter's impasse resolution provisions did not exclude the MAA's just cause proposals from binding interest arbitration. (*MAA*, at pp. 18–19, 25.) But unlike the ALJ, PERB concluded that section 10.104 should and could be harmonized with the MMBA. (*MAA*, at pp. 29–30.) Upon doing so, PERB found that section 10.104 allows the City to "establish

7

[just cause] protections by regulation, policy, or MOU, including provisions negotiated with [the] MAA or directed as part of the Charter's broad interest arbitration mechanism for resolving bargaining disputes." (*MAA*, at p. 30.) PERB therefore held that "the City violated its Charter" and the MMBA "by refusing to engage in interest arbitration over the" MAA's proposals. (*MAA*, at p. 31.) For this same reason, PERB held that the City engaged in bad faith bargaining. (*Id.* at p. 32.) Finally, PERB enjoined the City from "[r]efusing to allow [the] MAA to submit" its proposals to arbitration and ordered the City to "[m]ake [the] MAA whole for extra bargaining costs and any wasted or diverted resources (other than the costs of litigating this case) that the City's MMBA violations caused in substantial part," plus interest. (*Id.* at p. 34.)

Pursuant to Government Code section 3542, the City filed a petition for a writ of extraordinary relief from PERB's decision (petition). We determined that a summary denial of the petition was not warranted and issued a writ of review.

## DISCUSSION

### A.

Under California law, the same "principles of construction" apply to statutes and charters. (*Don't Cell Our Parks v. City of San Diego* (2018) 21 Cal.App.5th 338, 349 (*Don't Cell Our Parks*).) These principles are well-established. " ' " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to

8

have meant what it said, and the plain meaning of the language governs." [Citation.]' " ' " (*T.M. v. Superior Court* (2024) 104 Cal.App.5th 664, 680–681.) But if that language is ambiguous, then "courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) "Courts may also ' " 'examine the context in which the [statutory] language appears, adopting the construction that best harmonizes the statute . . . with related statutes' " ' [citation], as well as consider ' " 'public policy' " ' [citation]. The end goal is to ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . .' " ' " (*T.M. v. Superior Court*, at p. 681.)

We " 'generally defer to PERB's construction of labor law provisions within its jurisdiction' " like the MMBA. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 911.) This is because " ' "PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' " ' " (*Id.* at pp. 911–912.) We therefore " 'follow PERB's interpretation [of the MMBA] unless it is clearly erroneous.' " (*Id.* at p. 912.) Finally, "[t]he findings of [PERB] with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, are conclusive." (Gov. Code, § 3542, subd. (c).)

We do not, however, defer to PERB's construction of laws outside its jurisdiction like the Charter. (See *Becerra v. McClatchy Co.* (2021)

9

69 Cal.App.5th 913, 942–943 ["We are aware of no authority that suggests a regulation is entitled to deference on a question outside the promulgating agency's jurisdiction"].) Indeed, the Charter is not a labor law; it is "the supreme law of the City." (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 170.) As a result, "[w]e accord 'great weight and respect' to the City's interpretation of its own charter, 'unless shown to be clearly erroneous.' " (*San Diegans for Open Government v. City of San Diego* (2018) 31 Cal.App.5th 349, 378 (*San Diegans*).) This principle applies "in particular to the powers of" the Commission because the "Charter invests [it] with such broad discretionary powers." (*San Francisco Fire Fighters Local 798 v. City and County of San Francisco* (2006) 38 Cal.4th 653, 667 (*S.F. Fire Fighters*).)

## B.

PERB held that the MAA's just cause proposals are eligible for binding interest arbitration under the Charter's impasse resolution provisions. The City contends that PERB misconstrued those provisions because they, by their terms, carve out the at-will status of the City's exempt employees from those matters otherwise subject to arbitration. We agree with the City.[5]

## 1.

In 1991, San Francisco voters adopted Proposition B, which amended the Charter by adding what are now sections A8.409 through

---

[5] Because we conclude that the MAA's just cause proposals are not eligible for interest arbitration under the Charter, we do not address the other arguments made by the City, including its argument that section 10.104 prohibits any alteration of the at-will status of the City's exempt employees without the approval of San Francisco voters. We express no opinion as to the merits of those arguments.

A8.409-6.  These amendments added, among other things, new impasse resolution procedures, including binding interest arbitration.  San Francisco voters amended those procedures in 1995 by adopting Proposition F.  The Charter's impasse resolution procedures—which are codified in section A8.409-4—"apply to all miscellaneous officers and employees," including the attorneys represented by the MAA. (§ A8.409-1.)

Under section A8.409, "the procedures herein adopted, *except as otherwise provided herein*, shall supersede and displace all other formulae, procedures and provisions relating to wages, hours, benefits and other terms and conditions of employment found in this Charter, in the ordinances and resolutions of the" City, "or in the rules, regulations or actions of boards or commissions of the" City.  (Italics added.)

Section A8.409-3, titled "Obligation to Bargain in Good Faith," imposes on the City an "obligation to bargain in good faith on all matters within the scope of representation as defined by Government [C]ode section 3504, relating to the wages, hours, benefits and other terms and conditions of" City "employment, including the establishment of procedures for the resolution of grievances concerning the interpretation or application of any agreement, and including agreements to provide binding arbitration of discipline and discharge . . . ."  But "except insofar as they affect compensation," "*matters within the jurisdiction of the*" Commission "*which establish, implement and regulate the civil service merit system shall not be subject to bargaining under this part . . . .*"  (§ A8.409-3, italics added.)

Section A8.409-3 proceeds to identify specific "matters" within the Commission's jurisdiction that are carved out from the City's

11

obligation to bargain "under this part."  These matters include "the authority, purpose*, definitions, administration and organization of the merit system* and the" Commission; "policies, procedures and funding of the operations of the" Commission "and its staff; the establishment and maintenance of a classification plan including the classification and reclassification of positions and the allocation and reallocation of positions to the various classifications; status rights; *the establishment of standards, procedures and qualifications for employment*, recruitment, application, examination, selection, certification and *appointment*; the establishment, administration and duration of eligible lists; probationary status and the administration of probationary periods, except duration; pre-employment and fitness for duty medical examinations except for the conditions under which referrals for fitness for duty examinations will be made, and the imposition of new requirements; *the designation of positions as exempt*, temporary, limited tenure, part-time, seasonal or permanent; resignation with satisfactory service and reappointment; exempt entry level appointment of the handicapped; approval of payrolls; and conflict of interest.  As to these matters, the" Commission "shall continue to be required to meet and confer pursuant to state law." (*Ibid*., italics added.)

Section A8.409-4, titled "Impasse Resolution Procedures," establishes procedures for resolving certain labor disputes if the City and union are unable to reach agreement on their own.  "*Subject to [s]ection A8.409-4(g)*, disputes pertaining to wages, hours, benefits or other terms and conditions of employment which remain unresolved *after good faith bargaining* between the" *City*, "*on behalf of its*

12

*departments, boards and commissions*, and a recognized employee organization representing classifications of employees covered under this part [(union)] shall be submitted to a three-member Mediation/Arbitration Board ('the Board') upon the declaration of an impasse either by the" City or union. (§ A8.409-4(a), italics added.) That Board consists of "one person" appointed by the City, "one person" appointed by the union, and one person "selected by agreement between the" City and union. (§ A8.409-4(b).)

"The Board may hold public hearings, receive evidence from the parties and . . . cause a transcript of the proceedings to be prepared." (§ A8.409-4(c).) It may also "meet privately with the parties to mediate or mediate/arbitrate the dispute" and "adopt other procedures designed to encourage an agreement between the parties, expedite the arbitration hearing process, or reduce the cost of the arbitration process." (*Ibid.*)

If the parties are unable to reach agreement after "the conclusion of the arbitration hearings, the Board shall direct each of the parties to submit . . . a last offer of settlement on each of the remaining issues in dispute. The Board shall decide each issue . . . by selecting whichever last offer of settlement on that issue it finds by a preponderance of the evidence presented during the arbitration most nearly conforms to those factors traditionally taken into consideration in the determination of wages, hours, benefits and terms and conditions of public and private employment . . . ." (§ A8.409-4(d).) Section A8.409-4(d) then identifies the relevant factors and requires that the Board "issue written findings on each and every one of" those "factors as they may be applicable to each and every issue determined in the award."

13

After giving the parties an opportunity to reach their own agreement following the issuance of the arbitration award and after the Board has "publicly disclosed" its award, the award is "final and binding." (§ A8.409-4(e).)  "Except as otherwise provided by this part, the arbitration decision shall supersede any and all other relevant formulae, procedures, and provisions of this Charter relating to wages, hours, benefits and terms and conditions of employment . . . ."  (*Ibid*.)

"The impasse resolution procedures set forth in [s]ection A8.409-4" "shall *not* apply to any rule, policy, procedure, order or practice . . . which is necessary to ensure compliance with Federal, State or local laws, ordinances or regulations."  (§ A8.409-4(g), italics added.)  "[I]n the event *the City acts to ensure compliance with* Federal, State, or *local laws, ordinances or regulations*, and the affected employee organization disputes said determination, *that determination . . . shall not be subject to arbitration*, but may be challenged in a court of competent jurisdiction."  (*Ibid*., italics added.)  Finally, under section 16.116, sections A8.409 though A8.409-6 "shall remain in effect as a part of this Charter as 'Appendix A Employment Provisions,' except that in instance of conflict or inconsistency between these sections of the Charter of 1932 and the body of this Charter, this Charter shall prevail . . . ."

**2.**

Article X of the Charter, titled "Personnel Administration," establishes the Commission and the scope of its jurisdiction, including its authority over the City's civil service merit system.

Section 10.100 of article X creates the Commission "which is charged with the duty of providing qualified persons for appointment to

14

the service of the" City.  The powers of the Commission over employment with the City are quite broad.  Under section 10.101, the Commission "shall adopt rules, policies and procedures *to carry out the civil service merit system provisions of this charter* and . . . *such rules shall govern . . . appointments*; promotions; transfers; resignations; *lay-offs or reduction in force*, *both permanent and temporary*, due to lack of work or funds, retrenchment or completion of work; *the designation and filling of positions, as exempt*, temporary, provisional, part-time, seasonal or permanent; status and status rights; . . . classification; conflict of interest; and *such other matters as are not in conflict with this Charter . . . .*"  (Italics added.)

Under section 10.104 of article X, "*[a]ll employees* of the" City "shall be appointed through competitive examination *unless exempted by this Charter*."  (Italics added.)  Section 10.104 then identifies "positions" that are "exempt from competitive civil service selection, appointment, and removal procedures" and establishes that "the person serving in [that exempt] position shall *serve at the pleasure of the appointing authority . . . .*"  (Italics added.)  Exempt positions identified by section 10.104 include "[a]ll attorneys, including an attorney to the Sheriff and an attorney for the Tax Collector, [and] City Attorney's and District Attorney's investigators . . . ."  Indeed, attorneys employed by the City have *always* served at the "pleasure" of the appointing authority under the Charter.[6]  (See, e.g., former S.F. Charter of 1900, art. V; former S.F. Charter of 1932, §§ 26, 29, 32, 33.)

_____

[6] We grant the City's request for judicial notice of sections of earlier versions of the Charter and the ballot digests and results of certain initiative measures relating to the City's attorneys and the Charter's interest arbitration provisions.  In doing so, we reject the

15

The "serve at the pleasure" language in the Charter has been construed to mean that exempt employees like the City's attorneys are "terminable at will." (*Kreutzer v. City and County of San Francisco* (2008) 166 Cal.App.4th 306, 317.) This construction comports with longstanding case law establishing that "[s]erving at pleasure means one is an at-will employee who can be fired without cause."[7] (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1693.)

**3.**

Pursuant to its broad authority "to carry out the civil service provisions of" the Charter (§ 10.101), the Commission has adopted rule 114. That rule governs *all* appointments, including exempt

MAA's contention that we may not consider these materials because the City did not introduce them into evidence at the hearing. "The interpretation of a statute . . . is a question of law, and we are not bound by evidence presented on the question in the trial court." (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 (*CTA*).) Indeed, we may consider legislative history materials "for the first time on appeal." (*CD Investment Co. v. California Insurance Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1426.) We also deny as moot the City's motion to strike the MAA's opposition or, in the alternative, to file a reply.

[7] (See, e.g., *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 783 ["A public employee serving at the pleasure of the appointing authority . . . is by the terms of his employment subject to removal without judicially cognizable good cause"]; *Johnston v. Trustees of Cal. State Univ. & Colleges* (1984) 151 Cal.App.3d 1003, 1008 ["A public employee serving at the pleasure of the appointing authority may constitutionally be terminated without judicially cognizable good cause and without a hearing"]; *Abel v. Cory* (1977) 71 Cal.App.3d 589, 595 ["it is settled that a public officer or employee serving at the pleasure of the appointing authority may be removed without cause or notice of hearing"]; *Boyd v. Pendegast* (1922) 57 Cal.App. 504, 507 ["Appointments to hold during the pleasure of the appointing power may be terminated at any time and without notice"].)

16

appointments.[8]  In fact, article VI of rule 114, titled "Exempt Appointment," specifically addresses exempt appointments.

Section 114.25 of article VI of rule 114 establishes that "[a]ll permanent employees of the" City "shall be appointed through the civil service process by competitive examination *unless exempted from the civil service examination and selection process in accordance with Charter provisions.*  Appointments excluded by [the] Charter from the competitive civil service examination and selection process shall be known as exempt appointments.  *Any person occupying a position under exempt appointment* shall not be subject to civil service selection, appointment, and removal procedures and *shall serve at the pleasure of the appointing officer*."  (Italics added.)  Section 114.26 then defines the process for creating an exempt position and places various limits on exempt appointments.

---

[8] In his proposed decision, the ALJ refused to consider rule 114 because "the City never offered" it "into evidence."  PERB likewise concluded that the City "waived" any argument based on the rule "by not raising it before the ALJ."  (*MAA, supra*, at p. 21.)  But on appeal, neither PERB nor the MAA objected to the City's reliance on rule 114 in its opening brief.  They have therefore forfeited any objection to our consideration of that rule here.  (See *Sciarratta v. U.S. Bank Nat. Assn.* (2016) 247 Cal.App.4th 552, 560, fn. 6 [by failing to raise an "issue in their respondent's brief," the defendants have forfeited it].)  In any event, the City did not forfeit any appellate arguments based on the entire "statutory framework" by failing to introduce that framework into evidence at the hearing below because "we review de novo the question of statutory interpretation . . . ."  (*Jackson v. LegalMatch.com* (2019) 42 Cal.App.5th 760, 769; see also *CTA, supra*, 28 Cal.3d at p. 699 ["The interpretation of a statute . . . is a question of law, and we are not bound by evidence presented on the question in the trial court"].)

**4.**

Relying on section A8.409-4, PERB and the MAA contend that all disputes over "discipline and order of layoff" must be submitted to binding interest arbitration because they fall "within the broad category of 'wages, hours, benefits, or other terms and conditions of employment.'" According to PERB, the City mistakenly "focuses . . . on other, ultimately inapplicable, Charter provisions" like section A8.409-3. We disagree. Upon considering all relevant Charter provisions and Commission rules and after applying the relevant principles of statutory construction, we conclude that the at-will status of exempt employees, including any limits on their order of layoff, is not subject to arbitration under the Charter.

As a threshold matter, we reject PERB's argument that section A8.409-3 does not carve out any matters from the impasse resolution procedures established by section A8.409-4 because section A8.409-3 only "establishes a broad requirement for the City to bargain in good faith, parallel to the requirement under the MMBA." PERB is correct that section A8.409-3 appears to restate the City's duty to bargain in good faith under the MMBA. But section A8.409-3 also states that certain "matters . . . shall *not* be subject to bargaining *under this part* . . . ." (Italics added.) Thus, section A8.409-3, by its terms, carves out matters from the City's duty to bargain "under this part."

Section A8.409-3 does not define the term "part." But it does expressly reference "the arbitration provisions of this part." (§ A8.409-3 ["No memorandum of understanding negotiated pursuant to this paragraph during the term of a City-wide memorandum of understanding shall be subject to *the arbitration provisions of this part*

18

until re-negotiation of the employee organization's City-wide memorandum of understanding," italics added].) In doing so, section A8.409-3 itself establishes that the term "part" includes the binding arbitration provisions found in section A8.409-4. (See *People v. Thomas* (1997) 56 Cal.App.4th 396, 401 ["a word or phrase repeated in a statute generally is presumed to have the same meaning throughout"].)

Other related Charter provisions confirm that the term "part" as used in section A8.409-3 must, at a minimum, include sections A8.409 through A8.409-6, which were adopted by San Francisco voters when they approved Proposition B in 1991 and Proposition F in 1995. (See *People v. Roberge* (2003) 29 Cal.4th 979, 987 (*Roberge*) [same words or phrases used in different parts of the same act generally have the same meaning].) For example, section A8.409 states: "If any officer or employee *covered by this part* engages in a strike . . ., said employee shall be dismissed from his or her employment." (Italics added.) Similarly, section A8.409-4 references "a recognized employee organization representing classifications of employees *covered under this part*." (Italics added.) Section A8.409-1, in turn, identifies the officers or employees "covered by . . . this part" by establishing that "[s]ections A8.409 through A8.409-6, inclusive, shall apply to all miscellaneous officers and employees except as set forth in [s]ection A8.590-1 et seq." Thus, the term "part" as used in section A8.409-3 must include sections A8.409 through A8.409-6.

This interpretation is reinforced by section A8.409-6. That section states: "Within sixty (60) days of adoption of this *amendment*, the Mayor shall appoint a panel which . . . shall review the current employee relations ordinance and make recommendations to the Board

19

of Supervisors for such changes as may be necessary to effectuate the purposes *of this part*." (Italics added.) By tying changes "necessary to effectuate the purposes of this part" to the adoption date of the corresponding "amendment" of the Charter, section A8.409-6 establishes that the term "part" must include the amendments that enacted section A8.409-6. Because sections A8.409-3, A8.409-4 and A8.409-6 were all part of the amendments to the Charter made by Proposition B in 1991, the term "part" as used in section A8.409-3 must include the binding interest arbitration provisions of section A8.409-4.

To the extent that any doubt remains, section 16.116 removes them. (See *Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1065 [statutory term must be construed " ' "with reference to the entire scheme of law of which it is part" ' "].) Under that section, the term "part" appears to refer to "Appendix A: Employment Provisions." Because Appendix A includes section A8.409-4, the term "part" as used in section A8.409-3 must include that section as well. (See *Roberge*, *supra*, 29 Cal.4th at p. 987.)

Thus, section A8.409-3, by its terms, carves out certain matters from "bargaining" under the impasse resolution procedures of section A8.409-4, including its interest arbitration process. And under the express terms of section A8.409-3, those carved-out matters encompass the MAA's just cause proposals.

Aside from an exception not applicable here,[9] the matters carved out by section A8.409-3 from the impasse resolution procedures in section A8.409-4 consist of "matters within the jurisdiction of the"

---

[9] Under section A8.409-3, matters that "affect compensation" are still subject to "bargaining" under section A8.409-4. Neither PERB nor the MAA argue that the just cause proposals fall within this exception.

Commission "which establish, implement and regulate the civil service merit system." Section A8.409-3 then identifies specific matters that fall within this carve-out. As relevant here, these carved-out matters include the "definitions, administration and organization of the merit system," "the establishment of standards, procedures and qualifications for employment . . . and appointment," and "the designation of positions as exempt . . . ." (§ A8.409-3.)

The at-will status of the City's attorneys and the City's right to terminate those attorneys without cause fall squarely within the ambit of the specific matters carved out by section A8.409-3.

First, contrary to the assertions of PERB and the MAA, exempt employees like the attorneys represented by the MAA are part of the City's "civil service merit system" as defined by the Charter. Under section 10.100, the Commission has the "duty of providing qualified persons for appointment to the service of the" City. To fulfill this duty, the Commission "shall adopt rules . . . to carry out the *civil service merit system provisions of this charter . . . .*" (§ 10.101, italics added.) And in describing what those rules "shall govern," section 10.101 does not, in any way, exclude exempt employees from their purview. To the contrary, section 10.101 makes clear that the Commission's rules "shall" cover*,* with *no* limitation: (1) "appointments," which, under longstanding case law, includes removals;[10] and (2) "lay-offs or

---

[10] (See, e.g., *Delano Farms Co. v. California Table Grape Com.* (2018) 4 Cal.5th 1204, 1240 ["as the officer who appoints the commissioners, the Secretary also has the power to remove them from office"]; *Sponogle v. Curnow* (1902) 136 Cal. 580, 582 [" 'The power to remove is an incident to the power to appoint' "]; *Ascherman v. San Francisco Medical Society* (1974) 39 Cal.App.3d 623, 642 ["The power to appoint usually implies the authority to remove"]; *Gardner v. Board of*

21

reduction in force, both permanent and temporary." Because the rules adopted by the Commission to implement the City's civil service merit system "shall govern" the "appointments" and "lay-offs" of *all* City employees, that system must govern the appointments and layoffs of the City's exempt employees. (See *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 ["we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language"].)

Indeed, section 10.101 expressly requires that the rules adopted by the Commission to implement the City's civil service merit system "govern . . . the *designation and filling of positions, as exempt . . . .*" (Italics added.) Because all positions, including exempt positions, are filled through "appointments" reported to the Human Resources Director (rule 114, § 114.1.1), the italicized language makes clear that the City's civil service merit system encompasses the hiring and firing of its exempt employees. (See, *ante*, at p. 21 & fn. 10.)

To the extent that any doubt remains, the Commission's rules eliminate them. "[T]o carry out the civil service merit system provisions of [the] Charter" (§ 10.101), the Commission adopted article VI of rule 114, titled "Exempt Appointment." That article both defines and limits exempt appointments. (See rule 114, §§ 114.25 & 114.26.) And with some exceptions that are not relevant here, article VI applies "to employees in *all* classes." (Rule 114, italics added.) Indeed, the Commission—by adopting section 114.25 of rule 114 to implement section 10.104, the Charter provision establishing the at-will status of the City's exempt employees—necessarily construed that provision as a

*Park Directors* (1917) 35 Cal.App. 597, 601 ["the power to appoint includes by implication the power to remove"].)

22

"*civil service merit system provision*[ ]." (§ 10.101, italics added). Thus, the Commission has determined that exempt employees are part of the City's civil service merit system. And that determination is entitled to deference. (See *S.F. Fire Fighters*, *supra*, 38 Cal.4th at p. 667 [interpretations of civil service provisions by "municipal civil service commissions" are entitled to deference and will not be overturned absent " 'a clear abuse of discretion' "]; *Mason v. Retirement Bd.* (2003) 111 Cal.App.4th 1221, 1228–1229 (*Mason*) [according "substantial deference" to "consistent interpretation of the charter provisions" by the City agency "designated by" the Charter to "administer the city's retirement system"].)

Second, the MAA's just cause proposals—which seek to alter the at-will status of the City's attorneys by limiting the City's ability to terminate them or lay them off—are "matters within the jurisdiction of the" Commission as specified by section A8.409-3. As relevant here, these "matters" include the "definitions, administration and organization of the merit system," "the establishment of standards . . . for employment . . . and appointment," and "the designation of positions as exempt." (§ A8.409-3.) And each of these specified matters encompasses the MAA's just cause proposals. For example, the proposals sought to alter the "definition" of an exempt employee within the City's civil service merit system. (*Ibid.*) And by seeking to alter the at-will status of the City's attorneys, the proposals concern the "administration and organization" of that system. (*Ibid.*) By requiring just cause for the termination of attorneys employed by the City, the proposals also create a new "standard[ ]" for the "employment" and "appointment" of those attorneys. (*Ibid.*; see also, *ante*, at p. 21 & fn. 10

[power to appoint includes power to remove]). Finally, the proposals, by seeking to alter the rights of certain City employees despite their exempt status, affect the "designation of positions as exempt."[11] (§ A8.409-3.) Because the MAA's just cause proposals fall squarely within the ambit of "matters" expressly carved out by section A8.409-3 from the impasse resolution procedures of section A8.409-4, they are not eligible for interest arbitration.

Once again, article VI of rule 114 reinforces this conclusion. Section 114.25 of that article establishes that "[a]ny person occupying a position under exempt appointment" is an at-will employee serving "at the pleasure of the appointing officer." (Rule 114, § 114.25; see, *ante*, at p. 17.) Thus, the Commission has determined that the at-will status of the City's exempt employees falls within its "jurisdiction" to "establish, implement and regulate the civil service merit system." (§ A8.409-3.) Because that determination is entitled to deference (see *S.F. Fire Fighters*, *supra*, 38 Cal.4th at p. 667; *Mason*, *supra*, 111 Cal.App.4th at pp. 1228–1229), we conclude that the MAA's just cause proposals are "matters" within the Commission's "jurisdiction" that are ineligible for interest arbitration under section A8.409-3's carve-out.

We reach the same conclusion under the language of section A8.409-4. Subdivision (g) of that section states that "[t]he impasse resolution procedures set forth in [s]ection A.409-4 . . . shall *not* apply to any rule, policy, procedure, order or practice . . . which is necessary to ensure compliance with . . . local laws, ordinances or regulations."

---

[11] PERB argues that the at-will status of the City's attorneys has nothing to do with the designation of their positions as exempt. But the definition of an "exempt" position under the Charter includes the at-will status of any person "serving in" that position. (§ 10.104.)

24

(Italics added.)  And "in the event *the City acts to ensure compliance with . . . local laws, ordinances or regulations*, and the affected employee organization disputes said determination, *that determination or action shall not be subject to arbitration*, but may be challenged in a court of competent jurisdiction."  (§ A8.409-4(g), italics added.)  In rejecting the MAA's just cause proposals, the City acted to ensure compliance with at least two "local laws, ordinances or regulations:" section 10.104 and section 114.25 of rule 114.  (§ A8.409-4(g).)  Thus, under section A8.409-4(g), the proposals are exempt from the Charter's interest arbitration provisions.  (See *S.F. Fire Fighters*, *supra*, 38 Cal.4th at pp. 673–674 ["exempted from the binding arbitration provisions are . . . actions taken to comply with antidiscrimination laws passed by the City itself, and not only City ordinances, but also municipal antidiscrimination 'regulations' "].)

The legislative history bolsters this conclusion.  The at-will status of exempt employees like the City's attorneys is an important issue for San Francisco voters.  Indeed, those voters have repeatedly approved Charter provisions establishing that the City's attorneys "serve at the pleasure of the appointing authority."  (§ 10.104; see former S.F. Charter of 1900, art. V; former S.F. Charter of 1932, §§ 26, 29, 32, 33.)  And in 1976, the voters rejected an initiative measure that would have "subject[ed]" the City's attorneys to "removal only for cause."  Yet, the ballot materials for the Charter's interest arbitration provisions do not even hint that *unelected* arbitrators may change the at-will status of the City's exempt employees, such as the City's attorneys, by overriding section 10.104, a measure repeatedly approved by the voters.  Because the at-will status of public employees is "such a vital condition of

25

employment," any possible change to that status through binding interest arbitration should have been "discussed" in the ballot materials. (*California Teamsters Public, Prof. etc. Union v. County of Solano* (1991) 233 Cal.App.3d 800, 804.)

It was not. Indeed, to the extent that the ballot materials mentioned the City's civil service system provisions, they stated that the interest arbitration provisions would not affect them.[12] Thus, we can reasonably infer that San Francisco voters did not intend to give unelected arbitrators the power to override voter approval of section 10.104 and alter the at-will status of any exempt City employee. (See *People v. Valencia* (2017) 3 Cal.5th 347, 364, fn. 6 (*Valencia*) [application of Proposition 47 "to inmates seeking resentencing under the Three Strikes Reform Act is a matter of such substantial import that the voters could reasonably expect that, if Proposition 47 applied to such inmates, the ballot materials would mention it"].)

Finally, the City's position that the at-will status of its exempt employees is not subject to binding interest arbitration under section A8.409-4 is entitled to deference. During negotiations with the MAA, the City never wavered from that position. Moreover, in a 2005 interest arbitration, the City reiterated its position that proposals to alter the at-will status of its exempt employees are "illegal" and cannot be adopted through arbitration. Meanwhile, neither PERB nor the

---

[12] In its only express references to the City's civil service merit system, the ballot materials stated: (1) "Proposition B would *not affect the civil service provisions on hiring and promotions*;" (2) "Proposition F includes major cost-cutters, such as: [¶] . . . [¶] *Protection of the civil service system* based on merit; and (3) "Proposition F eliminates automatic salary increases for City employees while *maintaining the fairness of the Civil Service system*. (Italics added, boldface omitted.)

26

MAA identify any instance where the City has agreed, much less suggested, that the at-will status of its exempt employees is subject to interest arbitration under section A8.409-4.  Indeed, none of the purported inconsistencies in the City's positions identified by PERB and the MAA reveal any inconsistency in the City's position on what matters are exempt from interest arbitration.[13]  We therefore defer to that longstanding position here.  (See *San Diegans, supra*, 31 Cal.App.5th at p. 378 [longstanding administrative interpretations of city charter provisions are entitled to deference]; *Don't Cell Our Parks, supra*, 21 Cal.App.5th at p. 350 [same]; *Mason, supra*, 111 Cal.App.4th at pp. 1228–1229 [same].)

Accordingly, we conclude that the MAA's just cause proposals are not eligible for binding interest arbitration under section A8.409-4.

**5.**

PERB and the MAA offer a number of reasons why the MAA's just cause proposals must be submitted to binding interest arbitration under section A8.409-4.  But none are persuasive.

First, the existence of express exclusions in section A8.409-4 and an analogous impasse resolution procedure for safety workers codified

---

[13] PERB and the MAA argue that the City took inconsistent positions on whether the at-will status of its exempt employees is subject to "bargaining."  But they do not dispute that the City consistently "asserted that [the] MAA's" just cause proposals were "ineligible for interest arbitration."  In any event, bargaining is not the same as agreeing to engage in binding interest arbitration.

PERB also claims that the City took inconsistent positions on whether it could agree to alter the at-will status of its attorneys.  But this purported inconsistency creates no conflicts with the City's position that the at-will status of its attorneys is not subject to interest arbitration.

in section A8.590-5 have no bearing on the arbitrability of the MAA's just cause proposals.  (See §§ A8.409-4(g) [consent decrees] & (h) [strikes], A8.409-7 [retiree health insurance contributions], A8.590-5 [identifying topics that are not subject to "[t]he impasse resolution procedures set forth in [s]ection A8.590-5"].)  Based on these express exclusions, PERB and the MAA argue that under the maxim *expressio unius est exclusion alterius*, the absence of a similar exclusion for the at-will status of the City's exempt employees means that the MAA's proposals to alter that status must be eligible for interest arbitration.  But as explained above, those proposals do fall within express exclusions codified in sections A8.409-3 and A8.409-4(g).  (See, *ante*, at pp. 21–25.)

In any event, arguments predicated on omissions in the interest arbitration provisions of the Charter contravene the rules of statutory construction applicable to city charters.  "The controlling principle governing charter cities is 'that by accepting the privilege of autonomous rule the city has all powers over municipal affairs . . . subject only to the *clear and explicit* limitations and restrictions contained in the charter. . . .  All rules of statutory construction as applied to charter provisions [citations] are subordinate to this controlling principle. . . .  Thus in construing the city's charter a restriction on the exercise of municipal power may not be implied.' " (*Westsiders Opposed to Overdevelopment v. City of Los Angeles* (2018) 27 Cal.App.5th 1079, 1086–1087.)  The Charter's interest arbitration provisions "intrude[ ] significantly upon the functions of" the City (*County of Sonoma v. Superior Court* (2009) 173 Cal.App.4th 322, 354) by giving arbitrators "the power to . . . perform municipal functions"

28

(*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 281). Specifically, they give arbitrators the City's "legislative" power to fashion "new contractual obligations." (*County of Sonoma v. Superior Court*, at p. 342; see also *id.* at p. 355 ["The decision of the arbitration panel is in no sense an act of the governing body"].) Thus, we may not imply any enlargement of that arbitral power, at the expense of the City's power over its own municipal affairs, based on the maxim *expressio unius est exclusio alterius*. (See *Long v. City of Fresno* (1964) 225 Cal.App.2d 59, 64–66 ["*expressio unius est exclusio alterius* does not control" if it would limit the city's authority over its municipal affairs].)

Second, the City's "obligation to bargain in good faith" over "agreements to provide binding arbitration of discipline and discharge" under section A8.409-3 does not obligate the City to subject those agreements to binding interest arbitration. Indeed, bargaining does not *require* binding arbitration. For example, under the impasse resolution procedures of the MMBA, good faith bargaining may, at most, result in an "advisory" recommendation from a "factfinding panel" (Gov. Code, § 3505.5, subd. (a)) that the public employer may reject (*id.*, § 3505.7). The City could also have bargained with the MAA over the submission of its proposals to voters under *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, without engaging in interest arbitration.

Third, the fact that the City's exempt employees are not subject to "*competitive civil service* selection, appointment, and removal procedures" does not mean that they are not part of the City's civil service merit system. (§ 10.104, italics added.) At most, this exemption establishes that those employees are not subject to certain specified

civil service merit system provisions. Nothing in the 2018 Commission memorandum suggests otherwise. Indeed, that memorandum largely repeats the language of section 10.104. And by stating that "Civil Service Rules and Commission policies regarding matters other than selections, appointments and separations may still apply to exempt appointees," the memo is presumably referring *only* to the "competitive civil service selection, appointment, and removal procedures" referenced in the previous paragraph of the memorandum and section 10.104.

Fourth, the Commission's absence from negotiations with the MAA does not support PERB's interpretation of the Charter's interest arbitration provisions. Although the Commission has the obligation under section A8.409-3 to meet and confer on any "matters" carved out from interest arbitration, that section further states that the City, "through its duly authorized representatives," may fulfill that obligation. To the extent that section A8.409-3 is ambiguous as to whether the City may negotiate on behalf of the Commission, section A8.409-4 is not. Section A8.409-4(a) makes clear that its impasse resolution procedures only apply to "disputes . . . which remain unresolved after good faith bargaining between the" City, "*on behalf of its . . . commissions*," and the union. (Italics added.)

Fifth, testimony from the City's witnesses about the meaning of any Charter provision has no bearing on our interpretation of that provision because "there is no evidence that the electorate as a whole, or indeed any significant part of it, was aware of" it. (*Valencia*, *supra*, 3 Cal.5th at p. 364, fn. 5; cf. *People v. Wade* (2016) 63 Cal.4th 137, 143 [statements of individual legislators are not relevant when construing a

30

statute].) In any event, that testimony is, at best, ambiguous and does not support PERB's and the MAA's interpretation of the Charter.[14]

Finally, nothing in the MMBA precludes San Francisco voters from excluding the MAA's just cause proposals from binding interest arbitration under the Charter. Both PERB and the MAA appear to concede this. Presumably, this is because the MMBA gives the City broad authority to "adopt reasonable rules and regulations . . . for the administration of employer-employee relations . . . ." (Gov. Code, § 3507, subd. (a).)

We therefore reject PERB's interpretation of the impasse resolution provisions of the Charter and hold, instead, that the MAA's just cause proposals are not subject to binding interest arbitration under those provisions.

---

[14] Based on testimony from a witness for the City, PERB and the MAA argue that the Commission has "no role with respect to the subjects listed in the Commission carve-out, including appointments." But that testimony does not support their argument. In the testimony cited by PERB and the MAA, the witness was asked: "So the rules that the commission establishes with respect to all of the various carve-outs listed are not applicable to attorneys, correct?" In response, the witness did not respond with an unequivocal, "yes." Instead, she responded: *"To the extent that they don't apply to exempt employees,* correct." (Italics added.) This carefully qualified response arguably implies that some of the carve-outs do apply to exempt employees.

The MAA also points to testimony where another witness for the City acknowledged that the duty to bargain under section A8.409-3 includes " 'the obligation to bargain over agreements to provide binding arbitration of discipline and discharge.' " As explained above, bargaining over a matter is not the same as agreeing to submit that matter to binding interest arbitration. (See, *ante,* at p. 29.)

31

## C.

PERB found that the City "engaged in bad faith bargaining" in violation of the MMBA solely because the City "repeatedly and preemptively stated that" the MAA's just cause proposals "would be ineligible for interest arbitration." (*MAA*, *supra*, at p. 32.)  We, however, find that those proposals were, in fact, ineligible for arbitration.  Thus, PERB erred in finding that the City violated the MMBA.  We therefore vacate PERB's findings to the contrary and its remedies based on those findings.[15]

## DISPOSITION

We reverse PERB's finding that the MAA's just cause proposals are subject to binding interest arbitration under the Charter.  We therefore set aside PERB's finding that the City violated the MMBA by refusing to submit those proposals to interest arbitration as well as the associated remedies ordered by PERB.  The City is entitled to recover its costs on appeal.


CHOU, J.


WE CONCUR.


JACKSON, P. J.
SIMONS, J.


A173302/ *CCSF v. PERB*

---

[15] Because we vacate PERB's findings of bad faith bargaining by the City, we need not address the propriety of PERB's remedies.

*City and County of San Francisco v. Public Employment Relations Board* (A173302)

Counsel:   Renne Public Law Group, Arthur Anthony Hartinger, Jonathan Victor Holtzman and Rafal Ofierski for Petitioner.

      Public Employment Relations Board, Jessica S. Kim, Joseph William Eckhart, Fernando Arturo Reyes and Jose Felix DeLaTorre for Respondent.

      Beeson, Tayer & Bodine, Susan K. Garea and Laura A. Christensen Garcia for Real Party in Interest.